# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LUCKY LITTER, LLC,<br>a Delaware limited liability company,<br><br>        Plaintiff and Counter-Defendant<br><br>v.<br><br>APPLICA CONSUMER PRODUCTS, INC.,<br>a Florida corporation,<br><br>        Defendant and Counter-Plaintiff. | Case No. 1:09-cv-3663<br><br>Judge Blanche M. Manning<br><br>Magistrate Judge Arlander Keys<br><br><br>**JURY TRIAL DEMANDED** |

## AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
## TO FIRST AMENDED COMPLAINT

Defendant and Counter-Plaintiff, Applica Consumer Products, Inc. ("Applica") hereby submits an AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO FIRST AMENDED COMPLAINT . Applica on September 11, 2009 answered counts I, II, III and IV, asserted affirmative defenses and raised counterclaims. Applica now answers counts II, V and VI of the First Amended Complaint, and asserts additional affirmative defenses as follows:

## ANSWER

## NATURE OF THE ACTION

1.      This action arises from Defendant's infringement of Lucky Litter's distinctive and valuable ScoopFree trademark (the "ScoopFree Mark"), which Lucky Litter uses in connection with its highly-acclaimed line of automatic self-cleaning cat litter boxes, manual cat litter boxes, and replacement litter trays (or cartridges) for both litter boxes. On or about June 12, 2009, Defendant began to advertise that a "ScoopMaid" replacement tray that "Works with the ScoopFree Litter box" would be "Coming Soon." Unless temporarily restrained and preliminarily enjoined, Defendant's forthcoming marketing and offering of "ScoopMaid" replacement trays for ScoopFree litter boxes is likely to cause confusion as to the affiliation or connection between Defendant and Lucky Litter, and as to the source, sponsorship, or approval of Defendant's goods, resulting in the unjust enrichment of Defendant and in irreparable damage to Lucky Litter's ScoopFree Mark.

**RESPONSE:** Applica admits that on or about June 12, 2009 it included a notification on its website that a "SCOOPMAID" by Litter Maid replacement tray would be available soon. Except as expressly admitted herein, Defendant otherwise denies the allegations of paragraph 1.

2.     Defendant's encroachment on the ScoopFree Mark is just the latest in a series of actions Defendant has taken in an attempt to drive Lucky Litter out of business. Beginning in December 2008, Defendant began making false and misleading statements to Lucky Litter's customers about the customers' ability to sell Lucky Litter's ScoopFree disposable litter trays in view of certain patent proceedings that are currently pending between the parties. In its most recent effort to intimidate Lucky Litter's customers, and put its competitor Lucky Litter out of business, Applica has threatened to sue Lucky Litter's customers unless they refrain from purchasing Lucky Litter's disposable litter trays and, instead, purchase Defendant's "ScoopMaid" disposable litter trays for use with Lucky Litter's ScoopFree products.

**RESPONSE**: Denied.

3.     Lucky Litter seeks, among other remedies, an order temporarily restraining, preliminarily enjoining and, thereafter, permanently enjoining, Defendant from marketing, manufacturing and/or selling "ScoopMaid" replacement trays for ScoopFree litter boxes, or *any replacement tray* for use with Lucky Litter's ScoopFree litter boxes. Finally, Lucky Litter seeks damages for injuries that have been caused (and will continue to be caused if Defendant is not enjoined) by Defendant's marketing and/or offering of "ScoopMaid" replacement trays for ScoopFree litter boxes in violation of the Lanham Act (15 U.S.C. §§ 1051, *et seq.),* federal law governing false designation of origin (15 U.S.C. § 1125(a)), the Illinois Deceptive Trade Practices Act (815 ILCS § 510/2, *et seq.),* and the common law regarding trademark infringement and unfair competition.

**RESPONSE:** The Defendant admits that Lucky Litter has sought an application for a Temporary Restraining Order which was denied, and whose complaint seeks damages arising from Defendant's marketing of "SCOOPMAID" by Litter Maid replacement trays. Except as expressly admitted herein, Defendant otherwise denies the allegations of paragraph 3.

## JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over Defendant because Defendant has engaged in business activities in, and directed to, the State of Illinois and within this judicial district, and because Defendant has knowingly committed tortious acts aimed at, and causing harm within, the State of Illinois and this judicial district. Moreover, Defendant maintains a registered agent for the service of process in this state in Springfield, Illinois.

**RESPONSE:** Defendant admits that this Court has personal jurisdiction over Defendant.  Except as expressly admitted herein, Defendant otherwise denies the allegations of paragraph 4.

5.      This Court has jurisdiction over the subject matter herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367. Lucky Litter's claims are, in part, based on violations of the Lanham Act, as amended, 15 U.S.C. §§ 1051-1127, *et seq*. The Court has jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §§ 1338(b) and 1367.

**RESPONSE:** Defendant admits this Court has subject-matter jurisdiction over Counts I, III and IV of the First Amended Complaint. Except as expressly admitted herein, Defendant otherwise denies the allegations of paragraph 5.

6.      Venue is proper in this judicial district under 28 U.S.C. § 1391(a) and (c) because it is where Lucky Litter and Defendant reside, because Plaintiff and Defendant transact business in this district, because Defendant is subject to personal jurisdiction in this district, and Plaintiff's only office is in this district. Furthermore, the damage to Lucky Litter and its intellectual property described herein continues to occur in this judicial district.

**RESPONSE:** Defendant admits that venue is proper in this District as to Counts I, III and IV of the First Amended Complaint.  Except as expressly admitted herein, Defendant otherwise denies the allegations of paragraph 6.

## PARTIES

7.      Plaintiff, Lucky Litter, is a Delaware limited liability company, with its principal and only place of business at 2 North Riverside Plaza, Chicago, Illinois. Lucky Litter has 10 employees, all of whom who work in its Chicago offices at 2 North Riverside Plaza.

**RESPONSE:** Defendant admits that Lucky Litter LLC is a Delaware Limited Liability Company. Defendant has insufficient knowledge and information to admit or deny the remaining allegations of paragraph no. 7, and therefore denies the same.

8.      Defendant Applica Consumer Products, Inc. ("Applica") is a Florida corporation having its principal place of business at 3633 Flamingo Road, Miramar, Florida 33027.

**RESPONSE:**  Admitted.

### LUCKY LITTER'S BUSINESS AND SCOOPFREE MARK

9.     Lucky Litter develops and sells innovative pet products that allow pet lovers to spend less time on unpleasant pet care chores so they can spend more quality time with their pets. Lucky Litter is best known for its revolutionary ScoopFree automatic and quick-clean manual litter boxes that utilize a disposable litter tray, all of which are sold under the ScoopFree Mark. Because the disposable litter trays are pre-filled with Fresh Step® Crystals litter (the "ScoopFree Replacement Litter Tray"), which provides unbeatable odor control, the automatic ScoopFree litter boxes can be left alone for weeks at a time. In addition, because the ScoopFree Replacement Litter Tray is completely disposable, consumers do not have to see, touch, or smell messy waste. Consumers simply replace the ScoopFree Replacement Litter Tray every few weeks, and their ScoopFree litter box is just like new. As such, the ScoopFree Replacement Litter Tray is both a highly innovative and a substantial component of Lucky Litter's business.

**RESPONSE:** Defendant admits that Lucky Litter markets self-cleaning litter boxes and disposable litter trays using the term "Scoopfree".  Defendant has insufficient knowledge and information to admit or deny the remaining allegations of paragraph no. 9, and therefore denies the same.

10.     Since adopting the ScoopFree Mark in 2005, Lucky Litter has expended considerable time, resources and effort in promoting its ScoopFree Mark throughout the United States and elsewhere. The company promotes and advertises its mark on a global basis, through regular Internet advertisements, its website located at http://scoopfree.com/, by attending trade shows in the United States and elsewhere, and through the promotional materials and other advertisements circulated and displayed by its major retail customers. Its total sales of ScoopFree-branded products exceed one million units. As a result of these efforts, Lucky Litter has built substantial recognition and goodwill and has developed significant intellectual property rights in its ScoopFree Mark, for which it has been issued a federal trademark registration by the United States Patent and Trademark Office. A copy of the Certificate of Registration is filed herewith as Exhibit 1. As a consequence of the extensive advertising, promotion, and use of Lucky Litter's ScoopFree Mark, Lucky Litter has developed enormous recognition for its services under its ScoopFree Mark and has acquired and enjoys an immensely valuable reputation and tremendous goodwill under its ScoopFree Mark.

**RESPONSE:** Defendant admits that Lucky Litter has alleged ownership of the federal trademark registration attached to the complaint as Exhibit 1. Defendant denies that Lucky Litter has acquired any valid trademark rights in the term "Scoopfree". Defendant has insufficient knowledge and information to admit or deny the remaining allegations in Paragraph 10, and therefore denies the same.

**DEFENDANT'S BUSINESS AND ITS "SCOOPMAID" DISPOSABLE LITTER TRAYS**

11.     Defendant Applica is a competitor of Lucky Litter. Defendant manufactures and sells self-cleaning cat litter boxes under the brand name "LitterMaid." Unlike Lucky Litter's

ScoopFree litter boxes, however, Defendant's self-cleaning litter boxes do not, *and cannot,* work with a disposable litter tray. Thus, while the purchaser of a ScoopFree litter box can avoid having to see, smell or touch any messy cat waste by simply disposing of ScoopFree Replacement Litter Tray every 30 days, a purchaser of a LitterMaid self-cleaning litter box must still empty a waste bin periodically, refill the litter bed, and then take the unit apart for washing and cleaning.

**RESPONSE:** Defendant admits that Lucky Litter is a competitor regarding the sale of self-cleaning litter boxes and that Defendant sells its self-cleaning litter boxes and replacement trays under the brand name Litter Maid. The remaining allegations of paragraph 11 are denied.

12.    Lucky Litter recently learned from one of its biggest retail customers, who is also a customer of Defendant, that Defendant would soon be offering disposable litter trays for use with Lucky Litter's ScoopFree products. On June 12, 2009, Lucky Litter visited Applica's LitterMaid website and discovered that Applica was advertising that a "ScoopMaid" disposable litter tray that "Works with the ScoopFree Litter box" would be "Coming Soon." *See* http://littermaid.com/ (last visited June 17, 2009). A true and correct copy of a screenshot from Defendant's website, which advertises the "ScoopMaid" replacement trays for ScoopFree litter boxes, is filed herewith as Exhibit 2. That advertisement is also reproduced below:



Coming Soon






Works with the Scoop Free' Litter box

**RESPONSE:** Defendant has insufficient knowledge and information to admit or deny the allegations in Paragraph 12, and therefore denies the same.

13.    Prior to running the advertisement set forth above, Defendant Applica had actual knowledge that Lucky Litter offers the identical product under its ScoopFree Mark. In fact, Lucky Litter and Defendant are currently involved in two patent infringement lawsuits, both of which concern Lucky Litter's ScoopFree self-cleaning litter boxes.

**RESPONSE:** Defendant admits that Lucky Litter and Applica are involved in a patent infringement lawsuit in the Eastern District of Texas, as well as in an ITC proceeding, both of which concern Lucky Litter's on-going infringement of Applica patents. Except as expressly admitted herein, Defendant otherwise denies the allegations of paragraph 13.

## THE PATENT INFRINGEMENT DISPUTES

14.     On March 8, 2007, Applica filed a patent infringement lawsuit against Lucky Litter in the United States District Court for the Eastern District of Texas, alleging that the LB model ScoopFree self-cleaning litter boxes infringed two patents: U.S. Patent Nos. Re. 36,847 ("the '847 patent") and 6,082,302 ("the '302 patent). Applica Consumer Products, Inv. v. Doskocil et al., No. 2:07-cv-73-CE (E.D. Tex.) (the "Texas Lawsuit"). Because neither Applica nor Lucky Litter has any offices or employees in the Eastern District of Texas, and because no witnesses are located in the Eastern District of Texas, Lucky Litter immediately moved to transfer the Texas Lawsuit to this District. Although the motion was initially denied, in January 2009, Lucky Litter moved for reconsideration in view of In re TS Tech USA Corp., 551 F.3d 1315 (Fed. Cir. 2008). The motion is fully-briefed and under submission.

**RESPONSE:** Applica admits filing a patent infringement lawsuit against Lucky Litter on or about March 8, 2007 in the U.S. District Court for the Eastern District of Texas alleging infringement of two U.S. patents, specifically, RE,36,847, and 6,082,302. Applica admits that Lucky Litter filed an unsuccessful motion to transfer the Texas lawsuit to the Northern District of Illinois, and that Lucky Litter moved for reconsideration, and the motion is fully-briefed and under submission. Except as expressly admitted herein, Defendant otherwise denies the allegations of paragraph 14.

15.     In November of 2007, Applica filed a Complaint with the United States International Trade Commission, charging Lucky Litter and other manufacturers with infringement of the '847 patent, but not the '302 patent. In the Matter of Certain Self-Cleaning Litter Boxes and Components Thereof, Inv. No. 337-TA-625 (U.S. Int'l Trade Comm'n) ("the ITC Action"). Applica did not name any of Lucky Litter's customers as respondents in the ITC Action.

**RESPONSE:** Applica admits that, in November of 2007, it filed a Complaint with the United States International Trade Commission, charging Lucky Litter and other entities with

infringement of the '847 Patent and not the '302 Patent. Except as expressly admitted herein, Defendant otherwise denies the allegations of paragraph 15.

16.     Because the '847 patent was asserted in the ITC Action, the claim of infringement of the '847 patent was stayed in the Texas Lawsuit pursuant to 28 U.S.C. § 1659(a). As a result, no substantive ruling has been issued in the Texas Lawsuit, despite the fact that the case has been pending for more than two years. Applica did not name any of Lucky Litter's customers as defendants in the Texas Lawsuit. Moreover, the deadline for adding new parties expired on January 15, 2009.

**RESPONSE:** Applica admits that the Texas lawsuit has been stayed by an order of the Court issued on August 28, 2009. Applica admits that it named as defendants Doskocil Manufacturing Company, Inc. and Lucky Litter LLC in the Texas lawsuit. Except as expressly admitted herein, Defendant otherwise denies the allegations of paragraph 16.

17.     On December 1, 2008, the Administrative Law Judge ("ALJ") issued an Initial Determination ("Initial Determination") in the ITC Action, finding that the ScoopFree self-cleaning litter boxes Lucky Litter was manufacturing at that time (the "LB Models") infringed only one claim of the '847 patent.

**RESPONSE:** Applica admits that, on December 1, 2008, the Administrative Law Judge issued a Final Initial Determination in the ITC Action, finding that Lucky Litter ScoopFree products infringe claim 33 of the '847 Patent. Except as expressly admitted herein, Defendant otherwise denies the allegations of paragraph 17.

18.     To avoid having its automatic litter boxes excluded from importation during the pendency of the appeal, Lucky Litter redesigned its self-cleaning litter boxes, ceased marketing its LB Models, and began to market new SX model ScoopFree self-cleaning litter boxes (the "SX Models"), which lacked a feature necessary to infringe. Lucky Litter also began to market a new litter box called the ScoopFree Slide, which also uses the ScoopFree Replacement Litter Tray, but is not self-cleaning. On December 15, 2008, Lucky Litter submitted a declaration to the ITC, informing the ITC and Applica that Lucky Litter was marketing the SX model ScoopFree automatic litter boxes and the ScoopFree Slide manual litter box.

**RESPONSE:** Denied.

19.     On April 8, 2009, the ITC issued a limited exclusion order ("LEO") that, beginning on June 7, 2009, would prohibit importation of "Self-cleaning litter boxes and components thereof, including cartridges, covered by claim 33 of U.S. Patent No. Re. 36,867," made or imported by or on behalf of Lucky Litter. Because Lucky Litter's customers were not named as respondents in the ITC Action, the ITC has no jurisdiction over any of them, and any order issued by the ITC cannot apply to them. Kyocera Wireless Corp. v. ITC, 545 F.3d 1340,

1358 (Fed. Cir. 2008). Lucky Litter has appealed the ITC ruling. *Lucky Litter LLC v. U.S. Int'l Trade Comm'n,* No. 09-1470 (Fed. Cir., July 24, 2009).

**RESPONSE:** Applica admits that on April 8, 2009, the ITC issued a limited exclusion order prohibiting the importation of self-cleaning litter boxes and components thereof, including cartridges, covered by claim 33 of U.S. Patent No. Re. 36,867 that are manufactured abroad by or on behalf of, or imported by or on behalf of Lucky Litter or its affiliated companies, parents, subsidiaries, or other related business entities, or their successors or assigns. Except as expressly admitted herein, Defendant otherwise denies the allegations of paragraph 19.

20. To clarify the scope of the LEO, and to ensure that the non-infringing ScoopFree litter boxes could be legally imported, Lucky Litter sought and obtained written rulings from U.S. Customs and Border Protection ("Customs") indicating that the ScoopFree Slide, the ScoopFree Replacement Litter Trays, and the ScoopFree SX Models are not covered by the LEO. Copies of Customs' written rulings are filed herewith as Exhibits 3-5.

**RESPONSE:** Applica admits that Lucky Litter has provided Exhibits 3-5 which purport to be letters from U.S. Customs and Border Protection. Except as expressly admitted herein, Defendant otherwise denies the allegations of paragraph 20.

21. Therefore, the only products barred from importation under the LEO are the LB Models, which Lucky Litter no longer makes, markets or sells.

**RESPONSE:** Denied.

22. With knowledge that Lucky Litter was marketing the ScoopFree Slide manual litter box and ScoopFree SX Models self-cleaning litter boxes, Applica started contacting Lucky Litter's customers, major pet retailers across the United States, falsely informing them that the required them to remove all of Lucky Litter's ScoopFree products from store shelves (including the ScoopFree Replacement Litter Trays).

**RESPONSE:** Denied.

23. Applica falsely informed Lucky Litter's customers that the LEO prohibited Lucky Litter from importing *all* of its ScoopFree products (including the ScoopFree Replacement Litter Trays) into the United States.

**RESPONSE:** Denied.

24. After a reasonable opportunity for further investigation and/or discovery, there is likely to be evidence that Applica falsely and misleadingly informed Lucky Litter's customers

that the ITC's ruling is dispositive on the issue of infringement, and that all that remains to be determined in the Texas Lawsuit is the amount of damages.

**RESPONSE:** Denied.

25. On March 6, 2009, Lucky Litter attempted to mitigate its damages by sending another letter to Applica, identifying the false statements Applica and its representatives were making to Lucky Litter's customers and demanding that they stop immediately. Lucky Litter received no response to its letter.

**RESPONSE:** Applica admits receipt of a March 6, 2009 letter from counsel for Lucky Litter to

which Applica replied on or about May 12, 2009. Except as expressly admitted herein,

Defendant otherwise denies the allegations of paragraph 25.

26. After Lucky Litter successfully obtained the rulings from Customs, clearly indicating that the ScoopFree Slide, ScoopFree Replacement Litter Trays, and the ScoopFree SX Models are not covered by the LEO, Applica engaged in its most egregious conduct to date— threatening to sue Lucky Litter's customers for past infringement *unless* these customers agreed to stop purchasing ScoopFree Replacement Litter Trays from Lucky Litter and, instead, purchase disposable litter trays from Applica for use with Lucky Litter's ScoopFree litter boxes.

**RESPONSE:** Denied.

27. Because none of Lucky Litter's ScoopFree litter boxes will work without the ScoopFree Replacement Litter Tray, Applica has specifically designed the confusingly-similar ScoopMaid litter trays for use with ScoopFree litter boxes to satisfy that demand.

**RESPONSE:** Denied.

**FIRST CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**

28. Plaintiff realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 27 of this Complaint.

**RESPONSE:** Defendant incorporates by reference, as if fully set forth herein, the answers to

the averments contained in the preceding paragraphs of the Answer.

29. As a result of Lucky Litter's extensive use and promotion of the ScoopFree Mark and Lucky Litter's commitment to seeking federal registration for, and protecting the distinctiveness of, the ScoopFree Mark, the ScoopFree Mark enjoys considerable goodwill, widespread recognition, and secondary meaning in commerce that has become associated with Lucky Litter and its goods and services.

**RESPONSE:** Denied.

30.     Prior to Defendant's advertisement of ScoopMaid litter trays for use with ScoopFree litter boxes, Defendant had actual knowledge and constructive notice (pursuant to 15 U.S.C. § 1072) of Lucky Litter's ownership and registration of the ScoopFree Mark.

**RESPONSE:** Denied.

31.     After a reasonable opportunity for further investigation and/or discovery, there is likely to be evidence that Defendant, in order to cause confusion or mistake or to deceive consumers, and in an attempt to trade on the enormous goodwill, reputation, and marketing power established by Lucky Litter under Lucky Litter's ScoopFree mark, deliberately and willfully advertised in interstate commerce that it intends to offer for sale a ScoopMaid replacement litter tray that "works with ScoopFree Litter boxes," and that such ScoopMaid replacement trays would be "coming soon."

**RESPONSE:** Denied.

32.     After a reasonable opportunity for further investigation and/or discovery, there is likely to be evidence that Defendant has offered to sell ScoopMaid replacement litter trays for ScoopFree litter boxes in interstate commerce, including in this judicial district.

**RESPONSE:** Denied.

33.     The ScoopMaid replacement trays for ScoopFree litter boxes that Defendant intends to sell will compete with ScoopFree replacement litter trays for ScoopFree litter boxes, and are being offered through the same channels of trade and/or advertising and to the same consumer groups.

**RESPONSE:** Defendant admits that the ScoopMaid by Litter Maid replacement trays will be offered through some of the same channels of trade and/or advertising and be offered to some of the same consumer groups. Except as expressly admitted herein, Defendant otherwise denies the allegations of paragraph 33.

34.     Lucky Litter has not consented to Defendant's use of ScoopMaid in connection with replacement litter trays for ScoopFree litter boxes.

**RESPONSE:** Admitted.

35.     Defendant's unauthorized use of ScoopMaid for replacement litter trays in conjunction with the tagline "Works with ScoopFree® Litter boxes," falsely indicates to consumers that Defendant's goods and services are in some manner connected with, sponsored by, affiliated with, related to, or approved by Lucky Litter.

**RESPONSE:** Denied.

36. Defendant's unauthorized use of ScoopMaid for replacement litter trays in conjunction with the tagline "Works with ScoopFree® Litter boxes," is likely to cause consumers to be confused as to the source, nature, and quality of the goods and services that Defendant is offering.

**RESPONSE:** Denied.

37. Defendant's use of ScoopMaid for replacement litter trays in conjunction with the tagline "Works with ScoopFree® Litter boxes," deprives Lucky Litter of the ability to control consumer perception of the quality of the services marketed under Lucky Litter's ScoopFree Mark and, instead, places Lucky Litter's valuable reputation and goodwill into the hands of Defendant, over whom Lucky Litter has no control.

**RESPONSE:** Denied.

38. The aforementioned acts of Defendant constitute federal trademark infringement in violation of 15 U.S.C. § 1114.

**RESPONSE:** Denied.

39. The intentional nature of Defendant's acts makes this an exceptional case under

15 U.S.C. § 1117(a).

**RESPONSE:** Denied.

40. Lucky Litter has been, is now, and will be irreparably harmed by Defendant's aforementioned acts of infringement, and, unless enjoined by the Court, Defendant will continue to infringe upon Lucky Litter's ScoopFree Mark. There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

**RESPONSE:** Denied.

## SECOND CAUSE OF ACTION
## FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING (15 U.S.C. § 1125(A))

41. Lucky Litter realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 40 of this Complaint.

**RESPONSE:** Defendant incorporates by reference, as if fully set forth herein, the answers to

the averments contained in the preceding paragraphs of the Answer.

42. As a result of Lucky Litter's extensive use and promotion of Lucky Litter's ScoopFree Mark and Lucky Litter's commitment to seeking federal registration for, and protecting the distinctiveness of, its ScoopFree Mark, its ScoopFree Mark enjoys considerable goodwill, widespread recognition, and secondary meaning in commerce that has become associated with Lucky Litter and its goods and services.

**RESPONSE:** Denied .

43.     Defendant's unauthorized use of ScoopMaid for replacement litter trays in conjunction with the tagline "Works with ScoopFree® Litter boxes," falsely suggests that Defendant's business is connected with, sponsored by, affiliated with, or related to Lucky Litter.

**RESPONSE.** Denied.

44.     Defendant's unauthorized use of ScoopMaid for replacement litter trays, as alleged herein, constitutes false designation of the origin of Defendant's goods and/or services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)).

**RESPONSE:** Denied.

45.     Beginning with the December 1, 2008 Initial Determination issued by the ITC's ALJ, Defendant began to threaten Lucky Litter's customers by making false and misleading statements in the marketplace concerning Lucky Litter's ability to import and sell its ScoopFree Replacement Litter Trays.

**RESPONSE:** Denied.

46.     Defendant falsely informed Lucky Litter's customers that they were required by the ALJ's Initial Determination to remove Lucky Litter's products (including its ScoopFree Replacement Litter Trays) from their shelves.

**RESPONSE.**   Denied.

47.     Defendant falsely informed Lucky Litter's customers that the ITC's LEO prohibited Lucky Litter from importing all of its ScoopFree products (including its ScoopFree Replacement Litter Trays).

**RESPONSE:**  Denied.

48.     After a reasonable opportunity for further investigation and/or discovery, there is likely to be evidence that Defendant has falsely and misleadingly informed Lucky Litter's customers that the ITC's ruling is dispositive on the issue of infringement, and that all that remains to be determined in the Texas Lawsuit is the amount of damages.

**RESPONSE:** Denied.

49.     Defendant's false and misleading statements to Lucky Litter's customers were objectively baseless, made in bad faith, and made in commercial advertising or promotion and misrepresent the nature, characteristics, or qualities of Lucky Litter's ScoopFree Replacement Litter Trays, in violation of 15 U.S.C. §1125(a)(1)(B).

**RESPONSE:** Denied.

50.     The intentional nature of Defendant's aforementioned acts makes this an

exceptional case pursuant to 15 U.S.C. § 1117.

**RESPONSE:** Denied.

51.     Lucky Litter has been, is now, and will be irreparably harmed by Defendant's aforementioned acts of infringement and, unless enjoined by the Court, Defendant will continue to infringe upon Lucky Litter's ScoopFree Mark. There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

**RESPONSE:** Denied.

### THIRD CAUSE OF ACTION
### COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

52.     Lucky Litter realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 51 of this Complaint.

**RESPONSE:**  Defendant incorporates by reference, as if fully set forth herein, the answers to

the averments contained in the preceding paragraphs of the Answer.

53.     Defendant's conduct constitutes deception by which Defendant's goods and services have been palmed off as those of Lucky Litter. Such conduct constitutes trademark infringement and unfair competition in violation of the common law of the Illinois.

**RESPONSE:**  Denied.

54.     Lucky Litter has used its ScoopFree Mark in connection with the marketing, creation, distribution and sale of cat litter boxes and related products since 2005. By reason of Lucky Litter's extensive use and promotion of the ScoopFree Mark, the ScoopFree Mark has become uniquely associated with Lucky Litter and identifies Lucky Litter as the source of ScoopFree goods.

**RESPONSE:**  Denied.

32.     Defendant's unauthorized use of ScoopMaid for replacement litter trays in conjunction with the tagline "Works with ScoopFree® Litter boxes," is likely to cause confusion or mistake, or is likely to deceive customers, consumers, the general public, and the trade as to the affiliation, connection, or association between Lucky Litter and Defendant and/or as to the origin of, sponsorship of, or other association between the parties' respective goods.

**RESPONSE:**  Denied.

55.     By reason of the foregoing, Defendant has infringed and is continuing to infringe on Lucky Litter's common law rights in and to Lucky Litter's ScoopFree Mark, and Defendant has become unjustly enriched by such acts of infringement.

**RESPONSE:**  Denied.

56.     Defendant's unlawful conduct has been and continues to be willful or willfully blind to Lucky Litter's rights, as Defendant has reason to know of Lucky Litter's rights.

**RESPONSE:**  Denied.

57.     Lucky Litter has been and will continue to be irreparably harmed by Defendant's aforementioned acts of trademark infringement and unfair competition, and, unless enjoined by the Court, Defendant's wrongful acts will continue. There is no adequate remedy at law for the harm caused by the acts of infringement and unfair competition alleged herein.

**RESPONSE:**  Denied.

## FOURTH CAUSE OF ACTION
## UNIFORM DECEPTIVE TRADE PRACTICES (815 ILCS § 510/2, *et seq.*)

58.     Plaintiff realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 58 of this Complaint.

**RESPONSE:**  Defendant incorporates by reference, as if fully set forth herein, the answers to

the averments contained in the preceding paragraphs of the Answer.

59.     Defendant has engaged in unfair or deceptive acts or practices, and thereby has (a) created a likelihood of confusion or misunderstanding with regard to the source, sponsorship, or approval of the goods it is offering for sale; (b) created a likelihood of confusion or misunderstanding with regard to whether Defendant is affiliated, connected, or associated with Lucky Litter; and (c) otherwise engaged in conduct creating a likelihood of confusion or misunderstanding. The aforementioned acts and/or other activities of Defendant violate the Uniform Deceptive Trade Practices Act, as adopted by Illinois (815 ILCS § 510/2, *et seq.*).

**RESPONSE:**  Denied.

60.     Defendant has willfully engaged in the deceptive trade practices complained of herein.

**RESPONSE:**  Denied.

61.     Lucky Litter has been, is now, and will be irreparably harmed by Defendant's aforementioned acts, and unless enjoined by this Court, Lucky Litter will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which there is no adequate remedy at law.

**RESPONSE:**  Denied.

## FIFTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

62.     Plaintiff realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 62 of this Complaint.

**RESPONSE:**  Defendant incorporates by reference, as if fully set forth herein, the answers to

the averments contained in the preceding paragraphs of the Answer.

63.     Lucky Litter obtained significant purchase orders for its ScoopFree Replacement Litter Trays from one of its biggest customers, whose name will remain confidential for purposes of this Complaint.

**RESPONSE:**  Defendant has insufficient knowledge and information to admit or deny the

allegations in Paragraph 63, and therefore denies the same.

64.     In reliance on these purchase orders, Lucky Litter increased its supply of the ScoopFree Replacement Litter Trays.

**RESPONSE:.** Defendant has insufficient knowledge and information to admit or deny the

allegations in Paragraph 64, and therefore denies the same

65.     After a reasonable opportunity for further investigation and/or discovery, there is likely to be evidence that Defendant was aware of these purchase orders.

**RESPONSE:** Denied.

66.     Without legal justification, Defendant threatened to sue Lucky Litter's customer for past infringement if the customer purchased the requested ScoopFree Replacement Litter Trays from Lucky Litter, which Defendant knew were not infringing.

**RESPONSE:**  Denied.

67.     Defendant made these threats with the intent to induce Lucky Litter's customer to cancel its outstanding purchase orders.

**RESPONSE:**  Denied.

68.     After a reasonable opportunity for further investigation and/or discovery, there is likely to be evidence that, as a result of Defendant's threats, Lucky Litter's customer cancelled its outstanding purchase orders for ScoopFree Replacement Litter Trays, resulting in significant lost revenue for Lucky Litter.

**RESPONSE:**  Denied.

69.     Lucky Litter's business relationship with this customer has also been damaged by Defendant's wrongful and unjustified conduct in and amount to be determined at trial.

**RESPONSE:** Denied.

70.     Lucky Litter is without adequate remedy at law.

**RESPONSE:** Denied.

71.     The acts of Defendant complained of have caused and continue to cause irreparable injury to Lucky Litter.

**RESPONSE:** Denied.

72.     Lucky Litter is entitled to a temporary restraining order, preliminary injunction and permanent injunction preventing Defendant from marketing replacement litter trays for Lucky Litter's ScoopFree litter boxes, and from making false and misleading statements about Lucky Litter's ability to sell its ScoopFree Re[placement Litter Trays.

**RESPONSE:** Denied.

73.     Lucky Litter has been damaged by the acts of Defendant complained of herein, and is entitled to damages for the injury it has suffered.

**RESPONSE:** Denied.

## SIXTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

74.     Plaintiff realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 74 of this Complaint.

**RESPONSE:**  Defendant incorporates by reference, as if fully set forth herein, the answers to

the averments contained in the preceding paragraphs of the Answer.

75.     Because Lucky Litter's ScoopFree litter boxes (both self-cleaning and manual) are designed to operate with the disposable ScoopFree Replacement Litter Trays, Lucky Litter had a reasonable expectation of continuing to sell a significant volume of its replacement ScoopFree Replacement Litter Trays to certain of its existing major retail customers.

**RESPONSE:** Denied.

76.     Defendant, a major competitor of Lucky Litter, was aware of this expectation.

**RESPONSE:** Denied.

- 16 -

77.     By virtue of Defendant's threats of litigation, made in bad faith, and its false and misleading statements concerning Lucky Litter's ability to sell its ScoopFree Replacement Litter Trays discussed herein, Lucky Litter has been unable to sell its ScoopFree Replacement Litter Trays to some of its customers, resulting in lost revenue for Lucky Litter.

**RESPONSE:**  Denied.

78.     Lucky Litter has been damaged by Defendant's wrongful conduct in its business relationships as a direct and proximate cause of Defendant's unlawful and unjustified conduct in an amount to be determined at trial.

**RESPONSE:**  Denied.

79.     Lucky Litter is without adequate remedy at law.

**RESPONSE:**  Denied.

80.     The acts of Defendant complained of have caused and continue to cause irreparable injury to Lucky Litter.

**RESPONSE:**  Denied.

81.     Lucky Litter is entitled to a temporary restraining order, preliminary injunction and permanent injunction preventing Defendant from marketing replacement litter trays for Lucky Litter's ScoopFree litter boxes, and from making false and misleading statements concerning Lucky Litter's ability to sell its ScoopFree Replacement Litter Trays.

**RESPONSE:**  Denied.

82.     Lucky Litter has been damaged by the acts of Defendant complained of herein, and is entitled to damages for the injury it has suffered.

**RESPONSE:**  Denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

83.     The complaint fails to state a claim upon which relief may be granted because

Plaintiff cannot demonstrate a likelihood of confusion or any other basis for its claims.

## Second Affirmative Defense

84.     Defendant cannot infringe Plaintiff's alleged "ScoopFree Mark", as defined in the complaint, since ScoopFree and ScoopMaid are not confusingly similar.

## Third Affirmative Defense

85.     Defendant cannot infringe Plaintiff's alleged ScoopFree Mark because the wording fails to indicate source.

## Fourth Affirmative Defense

86.     Defendant cannot infringe Plaintiff's alleged "ScoopFree Mark" because the only common term is the word Scoop which is descriptive and/or generic and in common use by numerous parties for the same or similar products.

## Fifth Affirmative Defense

87.     Plaintiff's claims are barred by the doctrine of trademark fair use.

## Sixth Affirmative Defense

88.     Plaintiff's claims are barred by the doctrine of unclean hands.

## Seventh Affirmative Defense

89.     Plaintiff has not suffered any damage or injury as a result of any activities of Defendant alleged in its complaint.

## Eighth Affirmative Defense

90.     Plaintiff's claims are barred by the doctrine of laches.

## Ninth Affirmative Defense

91.     Plaintiff's claims are barred by the doctrine of estoppel.

## Tenth Affirmative Defense

92.     Plaintiff's claims are barred by the doctrine of acquiescence.

### Eleventh Affirmative Defense

93.     Applica has made no false or misleading statements of fact.

### Twelfth Affirmative Defense

94.     Any loss of business to Lucky Litter is not caused by any statements or actions of Applica

### Thirteenth Affirmative Defense

95.     Any loss of potential business to Lucky Litter is not caused by any statements or actions of Applica.

### Fourteenth Affirmative Defense

96.     Applica has a privilege to inform customers and the trade of the existence of the ITC Order and the finding that Lucky Litter infringed an Applica patent.

## COUNTERCLAIMS

Counter-Plaintiff Applica Consumer Products, Inc., counterclaims against Counter-Defendant Lucky Litter LLC ("Lucky Litter") and states as follows:

## NATURE OF THE ACTION

1.      This action arises from Lucky Litter's attempts to block competition in the market for replacement litter trays, and to deny consumers a non infringing alternative.  When faced with Applica's new replacement tray, Lucky Litter brought suit versus Applica and sought a temporary restraining order (TRO) claiming trademark infringement of the descriptive name ScoopFree by Applica's sale of "ScoopMaid by Litter Maid" trays.  When the TRO motion failed, Lucky Litter set up a blog at www.wheresmyscoopfreetray.com where Lucky Litter made false claims regarding Applica's trays and including a "test" that falsely claimed the Applica trays are defective, will not control odors or will harm consumer's floors or litter boxes.  Lucky Litter also improperly changed its customer warranty terms to intimidate consumers from buying the ScoopMaid by Litter Maid replacement trays.

2.      Applica seeks to cancel the descriptive and/or generic Lucky Litter "Scoop Free" trademark registration, or in the alternative, to modify the registration to confirm that the term "Scoop" is ubiquitous in the cat litter market, and cannot be owned by Lucky Litter, or be used to claim infringement. In addition, Applica seeks redress for Lucky Litter's false and disparaging advertising and improper warranty, all calculated to prevent consumers from buying Applica's replacement trays, and to harm Applica.

## JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over Lucky Litter because Lucky Litter claims its principal place of business in this district and has engaged in business activities in, and directed to, the State of Illinois and within this judicial district, and because Defendant has

knowingly committed tortious acts aimed at, and causing harm within, the State of Illinois and this judicial district..

4.      This Court has jurisdiction over the subject matter herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367. Applica's false advertising claims are, in part, based on violations of the Lanham Act, as amended, 15 U.S.C. §§ 1051-1127, *et seq*. The Court has jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §§ 1338(b) and 1367.

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391(a) and (c) because Lucky Litter resides in this judicial district, and because Plaintiff and Defendant transact business in this district, because Plaintiff is subject to personal jurisdiction in this district, and Plaintiff's only office is in this district. Furthermore, a substantial part of the acts giving rise to the claims occurred in this judicial district.

## PARTIES

6.      Counter-Plaintiff Applica Consumer Products, Inc. is a Florida corporation with its principal place of business at 3633 Flamingo Road, Miramar, Florida 33027.

7.      Counter-Defendant Lucky Litter LLC is a Delaware limited liability company, with its principal place of business at 2 North Riverside Plaza, Chicago, Illinois 60606.

## FACTUAL ALLEGATIONS

### *Applica and Litter Maid Line*

8.      Applica has since the year 2000 marketed a line of cat litter products under the LITTERMAID name and has broadened the line to include additional members of the LITTERMAID trademark family, such as LITTERMAID ELITE, LITTERMAID ONE-STEP, LITTERMAID KITTY KABANA and SCOOPMAID.

9.      Lucky Litter entered the litter market on or about 2005 and sold products that infringe U.S. Patent Nos. 36,847 and 6,082,302. Applica sued Lucky Litter in the United States District Court for the District of Texas alleging patent infringement and other violations, and filed an International Trade Commission complaint which resulted in a Limited Exclusion Order (LEO) barring imports of Lucky Litter products on or about April 8, 2009.

10.     As Lucky Litter was barred by the LEO from supplying replacement litter cartridges for the Lucky Litter self-cleaning machines, Applica provided an alternative to consumers. Applica's replacement trays are branded SCOOPMAID by Litter Maid as a lawful alternative to work with the Lucky Litter machines and are marketed by major retailers, including Petsmart®.

*Lucky Litter Files the Present Action Attempting to Enforce Invalid Registration*

11.     In response, Lucky Litter on August 3, 2009 filed an action in the U.S. District Court for the Northern District of Illinois alleging trademark infringement and other claims. Lucky Litter plead ownership of U.S. Trademark No. 3,395,851 (SCOOP FREE), issued on March 11, 2008 (a copy of the registration is attached hereto as Exhibit A).

12.     U.S. Registration No. 3,395,851 was improperly issued as "SCOOP FREE" is merely descriptive and/or generic for Lucky Litter's products. Alternatively, Lucky Litter's registration was improperly issued as it failed to include a disclaimer of the descriptive and/or generic term "SCOOP", which is widely used by numerous parties, in connection with Lucky Litter's products.

*Lucky Litter's Illegal Warranty Exclusion*

13.     In response to Applica's offering of an alternative replacement litter tray to consumers, Lucky Litter sought to intimidate consumers from buying Applica's trays by

changing the warranty for the SCOOP FREE trays. In particular, Lucky Litter changed the warranty to read as follows:

> "This Limited Warranty does not cover misuse, abuse, accidents or **unauthorized services or parts**, **or the combination of ScoopFree with other products**."

14.     *As no other trays are believed to be on the market which work with the Lucky Litter self-cleaning machines, other than the Applica SCOOP MAID trays*, Lucky Litter's warranty exclusion is intended to inform consumers their warranties are void if Applica litter trays are used in a SCOOP FREE litter box.

15.     Lucky Litter changed its warranty terms with knowledge of and in clear violation of the Magnuson-Moss Warranty Act. (15 U.S.C. § 2301 et seq.).

<em>Lucky Litter's False and Misleading Blog</em>

16.     On or about August 1, 2009, Lucky Litter began to operate a blog at the URL www.WHERESMYSCOOPFREETRAY.COM. On the blog, Lucky Litter refers to Applica's SCOOPMAID replacement tray as an **"Imposter Tray!"** and warned consumers **"Do not accept an imitation!"** (*See* Ex. B.) It also posted on the blog, comments purportedly made by consumers. Upon information and belief, some such comments were in fact written, solicited or posted by Lucky Litter, its employees and/or those affiliated with Lucky Litter and/or its employees.

17.     On the blog, Lucky Litter also advertises its own ScoopFree trays and provides a link for consumers to purchase ScoopFree replacement trays directly from Lucky Litter online.

18.     In an effort to induce consumers to buy the ScoopFree product instead of the ScoopMaid product, Lucky Litter further states on the blog that "because we cannot vouch for the quality of ScoopMaid trays, (or other trays not made by us), please understand that we cannot

honor litter box warranties when used with third party trays," in clear violation of the Magnuson-Moss Warranty Act. (*See* Ex. B.)

19. Upon information and belief, consumers have relied upon Lucky Litter's misrepresentations regarding ScoopMaid, and were led to believe that their warranties for the ScoopFree litter boxes are voided by use of ScoopMaid trays. On Lucky Litter's blog, an alleged consumer stated about her ScoopFree litter box, "I'm unbelievably upset, and I have no recourse. My warranty is now void."

20. On or about August 10, 2009, before even seeing one of Applica's ScoopMaid trays, Lucky Litter questioned their quality. Specifically, Lucky Litter stated **"we have not yet seen one of these trays, but…we have concerns about the quality of the ScoopMaid trays."** (See, Ex. B.)

21. On or about August 26, 2009, Lucky Litter further stated on its **blog "ScoopMaid is not up to par."** (See, Ex. C.)

22. Lucky Litter has no patent covering its litter tray.

23. Lucky Litter posted its own comment on the blog intended to deter manufacturers, retailers and consumers from purchasing SCOOP MAID litter trays by implying that it had patent rights in the litter trays, and that purchases of SCOOP MAID litter trays were patent infringements. Specifically, Lucky Litter stated:

> "In addition, we currently have a pending patent on our tray design and feel that ScoopMaid is an unsanctioned copy. We are disappointed that some manufacturers and retailers are not respecting our pending patent"

(See, Ex. B.)

*Lucky Litter's False and Misleading Test and Video*

24.     In August 2009, Lucky Litter launched a national advertising campaign intended to mislead customers and potential customers regarding the performance of Applica's ScoopMaid litter trays.

25.     In connection with that campaign, Lucky Litter began using comparative advertisements, which falsely state, imply and/or mislead consumers to believe that: (1) ScoopFree litter trays outperform ScoopMaid litter trays in the areas of odor control and leakage; (2) ScoopMaid litter trays cannot withstand the daily litter box habits of the average cat; and (3) ScoopMaid trays are not compatible with ScoopFree machines.

26.     Lucky Litter's false advertising campaign includes a video (the "Lucky Litter Video") titled "Scoop Free v. ScoopMaid: How well does the imposter work?"

27.     The Lucky Litter Video shows a side-by-side test, performed by Lucky Litter employees, including Lucky Litter president, Alan Cook ("Cook"), and purportedly designed to compare the efficacy of ScoopFree litter trays versus ScoopMaid litter trays in controlling odor and leakage. The clear and intended messages from the Lucky Litter Video are that Lucky Litter's ScoopFree litter trays are somehow better in the areas of odor control and leakage, and that Applica's ScoopMaid litter trays, used under normal conditions, do and will allow urine to leak through to the customer's floor.  For example, making reference to ScoopMaid litter trays, the Lucky Litter Video asks, "Do you want urine to leak through to your floor?"

28.     The Lucky Litter video published on or around August 26, 2009.

29.     Shortly after publication, Lucky Litter issued a press release that instructed customers and potential customers to make purchasing decisions based on the Lucky Litter Video and, more specifically, the results of the a side-by-side test: **"Buyer Beware: LitterMaid's ScoopMaid Fails the Test – on Video."**  (See, Ex. C.)  In that press release,

Lucky Litter made specific representations that the side-by-side test "verif[ied]" a number of unsubstantiated complaints allegedly made in the marketplace about or regarding ScoopMaid litter trays, including premature odor, urine soaking through the tray, cats rejecting the new litter, shorter lifespan compared to ScoopFree litter trays, and dimensional incompatibility with ScoopFree machines. The press release concluded:

> Now imagine, if this much damage was done by water after 15 minutes, how can ScoopMaid trays withstand the daily litterbox habits of the average cat?
>
> Our recommendation is simple...
> **Use ScoopFree Litter Trays with your ScoopFree Litter Box.**

30. For at least the following reasons, the Lucky Litter Video and the August 26, 2009 press release (collectively "the ScoopFree Advertising") are literally and impliedly false and/or misleading.

31. First, the side-by-side test relied on in the ScoopFree Advertising was improperly designed. The side-by-side test did not replicate, or focus on real world use of litter trays. For example, Lucky Litter's own product brochures instruct customers to "make sure" that ScoopFree litter trays are placed on a level location. (*See* Exs. D.) Lucky Litter's product brochures also state that ScoopFree litter trays arrive pre-packaged with Fresh Step Crystals, which "provide unbeatable odor control" and "absorbs urine on contact and dries solid waste to reduce odor." (*See* Exs. D and E.) In order to test for odor control and leakage, however, Lucky Litter ignored those instructions and recommendations. Instead, Lucky Litter employees placed empty litter trays at an angle, alleged to pour equal amounts of water therein, and allowed the water to pool. The side-by-side study therefore, does not and cannot support the asserted and implied claims regarding odor control and leakage and/or the performance of Applica's ScoopMaid litter trays in normal use. Further still, to test for odor, an ammonia based solution is typically used that more closely mimics the odor of urine. There is no indication that Lucky

Litter took, or even considered this step. Instead, contrary to established practice, Lucky Litter used odorless water.

32.     Second, Lucky Litter claims that the ScoopMaid litter tray shown in the Lucky Litter Video "leaked all the way though." Lucky Litter's assertions and visual demonstrations are completely false and misleading because the ScoopMaid litter tray did not show leakage.

33.     Third, Lucky Litter states that the side-by-side test shown in the Lucky Litter Video "verifies" complaints that cats reject the litter used with ScoopMaid litter trays, that ScoopMaid litter trays has a shorter lifespan compared to ScoopFree litter trays, and that ScoopMaid litter trays are dimensionally incompatible with ScoopFree machines. None of these claims were tested or supported by Lucky Litter.

## FIRST COUNTERCLAIM
### (False Advertising and Commercial Disparagement Under
### The Lanham Act, 15 U.S.C. 1125(a))

34.     Applica realleges and incorporates by reference all Paragraphs 1 through 33 of its counterclaims as if fully set forth herein.

35.     Lucky Litter has made false and misleading statements in commercial advertisements regarding its ScoopFree litter trays and/or Applica's ScoopMaid litter trays.

36.     Lucky Litter's statements are literally and impliedly false and/or likely to deceive customers about the true nature, characteristics, and qualities of its ScoopFree litter trays and/or Applica's ScoopMaid litter trays.

37.     Lucky Litter's false and/or misleading statements have already, and will continue, to influence purchasing decisions to the extent that customers choose its ScoopFree litter trays instead of Applica's ScoopMaid litter trays.

38.     ScoopFree litter trays and ScoopMaid litter trays are offered, advertised, and sold to customers throughout the country; therefore, Lucky Litter's false and/or misleading statements affect interstate commerce.

39.     As a direct and proximate result of Lucky Litter's conduct, Applica has and will continue to incur actual damages, entitling Applica is to an injunction, corrective advertising, treble its damages, Lucky Litter's profits derived from its unlawful acts, and increased pursuant to the principles of equity pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117.

## SECOND COUNTERCLAIM
### (Cancellation Of Scoop Free Federal Registration)

40.     Applica realleges and incorporates by reference all Paragraphs 1 through 39 of its counterclaims as if fully set forth herein.

41.     The term SCOOP FREE is merely descriptive and/or generic for the goods offered for sale by Lucky Litter and thus cannot serve to identify Lucky Litter as the source.

42.     The SCOOP FREE mark has not acquired secondary meaning.

43.     Lucky Litter's federal registration for the SCOOP FREE mark was granted less than five years ago.

44.     Applica has been damaged and is likely to continue to be damaged by registration of the SCOOP FREE mark.

45.     Lucky Litter's federal registration for the mark SCOOP FREE should be cancelled pursuant to 15 U.S.C. §1119.

## THIRD COUNTERCLAIM
### (Rectification of Scoop Free Federal Registration)

46.     Applica realleges and incorporates by reference all Paragraphs 1 through 45 of its counterclaims as if fully set forth herein.

47. The term SCOOP is merely descriptive and/or generic for the goods offered for sale by Lucky Litter and is in wide use by numerous parties, and thus cannot serve to identify Lucky Litter as the source of those goods.

48. The term SCOOP has not acquired secondary meaning

49. As an unregistrable component of the SCOOP FREE mark, pursuant to 15 U.S.C. § 1119, the term SCOOP must be disclaimed.

## <u>FOURTH COUNTERCLAIM</u>
### (Violation of Uniform Deceptive Trade Practices Act, 815 ILCS 505/10a)

50. Applica realleges and incorporates by reference all Paragraphs 1 through 49 of its counterclaims as if fully set forth herein.

51. Lucky Litter has engaged in unfair competition and deceptive trade practices under 815 ILCS §505/10

52. Lucky Litter has made a series of false, deceptive and misleading statements to consumers about its ScoopFree litter trays and/or Applica's ScoopMaid litter trays.

53. In making such false, misleading, and disparaging representations, Lucky Litter purposely intended to induce consumers to act in reliance on the deception by altering their purchasing decisions.

54. Lucky Litter has also changed warranty provisions for the ScoopFree product, which unlawfully require that consumers of its ScoopFree litter box use only ScoopFree products in order for the warranty to remain effective.

55. Lucky Litter's warranty provision is a direct violation of 15 U.S.C. 2301(c) of the Magnuson-Moss Warranty Act.

56. Upon information and belief, Lucky Litter knew when it changed the warranty that the action was unlawful. Despite this knowledge, Lucky changed the warranty with the intent to deceive consumers and persuade them to purchase only ScoopFree replacement trays.

57.     Lucky Litter has willfully engaged in the deceptive trade practices complained of herein.

58.     Applica has been, is now, and will be irreparably harmed by Lucky Litter's aforementioned acts, and unless enjoined by this Court, Applica will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which there is no adequate remedy at law.

59.     Applica has been damaged by the acts of Lucky Litter complained of herein, and is entitled to damages for the injury it had suffered.

### FIFTH COUNTERCLAIM
**(Violation of Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2)**

60.     Applica realleges and incorporates by reference all Paragraphs 1 through 59 of its counterclaims as if fully set forth herein.

61.     Lucky Litter has fraudulently deceived consumers and engaged in deceptive business practices under 815 ILCS §505/2.

62.     Lucky Litter has made a series of false, deceptive and misleading statements to consumers about its ScoopFree litter trays and/or Applica's ScoopMaid litter trays.

63.     In making such false, misleading, and disparaging representations, Lucky Litter purposely intended to induce consumers to act in reliance on the deception by altering their purchasing decisions.

64.     Lucky Litter has also changed warranty provisions for the ScoopFree product, which unlawfully require that consumers of its ScoopFree litter box use only ScoopFree products in order for the warranty to remain effective.

65.     Lucky Litter's warranty provision is a direct violation of 15 U.S.C. 2301(c) of the Magnuson-Moss Warranty Act.

66.     Upon information and belief, Lucky Litter knew when it changed the warranty that the action was unlawful.  Despite this knowledge, Lucky changed the warranty with the intent to deceive consumers and persuade them to purchase only ScoopFree replacement trays.

67.     Lucky Litter has willfully engaged in the deceptive trade practices complained of herein.

68.     Applica has been, is now, and will be irreparably harmed by Lucky Litter's aforementioned acts, and unless enjoined by this Court, Applica will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which there is no adequate remedy at law/

69.     Applica has been damaged by the acts of Lucky Litter complained of herein, and is entitled to damages for the injury it had suffered.

## SIXTH COUNTERCLAIM
### (Tortious Interference with Prospective Economic Advantage)

70.     Applica realleges and incorporates by reference all Paragraphs 1 through 69 of its counterclaims as if fully set forth herein.

71.     Applica has developed and acquired valuable economic relationships with its customers and has a reasonable expectation of continuing to its ScoopMaid litter trays.

72.     On information and belief, Lucky Litter possessed and possesses knowledge of such relationships and Applica's expectations.

73.     Lucky Litter has attempted to prevent consumers from purchasing Applica's ScoopMaid litter trays by making false representations to consumers about its own ScoopFree litter trays, and by publishing false and disparaging statements about Applica's product.

74.     On information and belief, Lucky Litter engaged in the aforementioned acts with the specific intent of disrupting such relationships.

75.     By virtue of Lucky Litter's false and misleading statement, Applica has been unable to sell its ScoopMaid litter trays to some of its customers, resulting in lost revenue.

76.     At least one customer, after reviewing Lucky Litter's blog, alleged to return a previously purchased ScoopMaid litter tray.

77.     In making such false and disparaging representations, Lucky Litter has acted in bad faith.

78.     Applica has been, is now, and will be irreparably harmed by Lucky Litter's aforementioned acts, and unless enjoined by this Court, Applica will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which there is no adequate remedy at law/

79.     Applica has been damaged by the acts of Lucky Litter complained of herein, and is entitled to damages for the injury it had suffered.

## JURY DEMAND

Applica hereby demands a jury trial on all issues so triable.

## RELIEF REQUESTED

WHEREFORE, Applica asks this court to enter judgment against Lucky Litter granting the following relief:

A.      Dismissing the First Amended Complaint with prejudice and denying each request for relief that Lucky Litter has made;

B.      A judgment that Lucky Litter has engaged in false adverting, promotion and descriptions under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), awarding Applica treble its damages, Lucky Litter's profits derived from its unlawful acts, and increased pursuant to the principles of equity, corrective advertising, and Applica's costs of suit and reasonable attorneys' fees;

C.      A judgment that Lucky Litter has engaged in commercial disparagement under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), awarding Applica treble its damages, Lucky Litter's profits derived from its unlawful acts, and increased pursuant to the principles of equity, corrective advertising, and Applica's costs of suit and reasonable attorneys' fees;

D.      A judgment that Lucky Litter's trademark SCOOP FREE is merely descriptive or generic and ordering cancellation of the same.  Applica further requests certification to the Director of the USPTO, instructing the Director to make the appropriate entries on the USPTO records.

E.      A judgment that the term SCOOP in Lucky Litter's trademark is generic and ordering a disclaimer of the word in the registration.  Applica further requests certification to the Director of the USPTO, instructing the Director to make the appropriate entries on the USPTO records.

F.      A judgment that Lucky Litter has violated the Uniform Deceptive Trade Practices Act, awarding Applica damages and issuance of a permanent injunction for the same;

G.      A judgment that Lucky Litter has violated the Illinois Consumer Fraud and Deceptive Business Practices Act, awarding Applica damages and issuance of a permanent injunction for the same;

H.      A judgment that Lucky Litter willfully committed such violations of the Illinois Uniform Deceptive Trade Practices Act Consumer Fraud and Illinois Deceptive Business Practices Act, awarding Applica treble or punitive damages and Applica's costs of suit and reasonable attorneys' fees;

I.      A judgment that Lucky Litter has tortiously interfered with Applica's prospective economic advantage and business expectancy, awarding Applica damages and issuance of a permanent injunction for the same;

J.      An award to Applica of all other compensatory damages in an amount to be determined at trial;

K.      An award to Applica of punitive damages in an amount to be determined at trial.

L.      An award to Applica of costs and attorney's fees associated with suit herein, to the extent not covered or allowed by the above.

M.      That the court grant Applica such other and further relieve as the court and/or a jury deems just and proper.

Dated: October 14, 2009                          APPLICA CONSUMER PRODUCTS, INC.,


By:     /s/  Michael R. Osterhoff
        One of Their Attorneys

        Michael R. Osterhoff
        michael.osterhoff@klgates.com
        Michael T. Murphy
        michael.murphy@klgates.com
        Adam L. Marchuk
        adam.marchuk@klgates.com
        K&L GATES LLP
        70 W. Madison Street, Ste. 3100
        Chicago, Illinois 60602
        Telephone: 312.372.1121
        Facsimile: 312.827-8000

## CERTIFICATE OF SERVICE

I hereby certify that, on this 14th day of October 2009, true and correct copy of the foregoing Answer, Affirmative Defenses, and Counterclaims to First Amended Complaint was served via ECF on Plaintiff's Counsel as follows:

Eric C. Cohen
Katten Muchin Rosenman LLP
525 W. Monroe Street
Suite 1900
Chicago, IL 60661-3693
(312) 902-5648
eric.cohen@kattenlaw.com

Manotti L Jenkins
Katten Muchin Rosenman LLP
525 West Monroe Street
Suite 1900
Chicago , IL 60661
(312) 902-5230
manotti.jenkins@kattenlaw.com

Carolyn E Passen
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago , IL 60661
(312) 902-5391
carolyn.miller@kattenlaw.com

Jeremy C. Daniel
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago , IL 60661
(312) 902-5627
jeremy.daniel@kattenlaw.com

By:   _/s/ Michael R. Osterhoff_____


*Attorney for Defendant*
*APPLICA CONSUMER PRODUCTS, INC.*